[File No. 7053]

MARY MOREHOUSE, for the use and benefit of R. J. Sailer, Appellant, v. PAUL E. PAULSON and Dunn County, North Dakota, a Municipal Corporation, Respondents.

(28 NW2d 608)

526

Opinion filed July 9, 1947.  Rehearing denied Sept. 10, 1947

*W. H. Esterly*, for appellant.

*H. L. Malloy, J. K. Eckes* and *Mackoff, Kellogg & Muggli,* for respondents.

528

BURR, J. This is an action to quiet title to the NE¼ of Sec. 10, Twp. 142, R. 93, in Dunn County. Plaintiff in his amended complaint alleged among other things that defendant Paulson was in adverse possession of the land as against her and that she demanded that he surrender possession to her which he refused to do. The defendants in their amended answer set out that the land had been acquired by the county under a tax sale and that a tax deed had been issued to the county, that thereafter the plaintiff, meaning Sailer, bought the pretended title of Mrs. Morehouse, subsequent to the time when defendant Paulson had bought the land from the county under contract for sale.

Plaintiff served an amended reply wherein he asserts that the notice of expiration of the period of redemption included the amount of taxes "due on subsequent tax sales certificates which had not been issued three years prior to the issuance of said notice of expiration of period of redemption;" that the printed notice of expiration of the period of redemption "set forth that the amount required to redeem was $746.90, whereas said notice unlawfully included the taxes" for these subsequent years. He tenders to the court for the use and benefit of the said Paul E. Paulson such sums of money as he is legally entitled to by virtue of the statute.

As respondents state the facts are practically undisputed and we set them forth briefly in order to determine the proper application of the law to the facts involved.

In 1928 the taxes levied on this land became delinquent and on December 10, 1929, the land was "offered for sale for the delinquent taxes against it and was sold to said county." For several years thereafter taxes were unpaid as were also the hail tax assessments, hereinafter set forth.

On November 23, 1932, Mary Morehouse and her husband Henry Morehouse received a deed to the premises executed to them "or the survivor of either of them."

On January 16, 1939, the county auditor of Dunn County issued "a Notice of Expiration of Period of Redemption", introduced in the case as plaintiff's Ex. 6. The sheriff received this notice on the date it was issued, January 16, 1939, and certified "I found Paul Paulson in actual possession of the land within described and I served the within notice upon him by then and there handing to and leaving with him personally a true and correct copy thereof on the 21st day of Jan. 1939."

Ex. 10 is a copy of the published notice of expiration of the period of redemption on land sold to the county at tax sale held on December 10, 1929, and therein it is stated that, "opposite each tract appears the amount which will be required to redeem from the effects of such tax sale at the expiration of the period of redemption including the amount for which the said land was sold, interest and penalty thereon, subsequent delinquent taxes prior to those of the year 1938, and penalties and interest thereon." In the published notice appear columns:

"Name of Record Title Owner   Description   Sec.   Amount
                                                    Required
                                                  to Redeem"

Under this in the proper column is found:

"Township 142, Range 93

. . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . .

Henry L. & Mary Morehouse          NE¼      10      $746.90"

A deed was issued to the county, and in February 1942 the county sold the premises to the defendant Paulson on contract for deed. Henry Morehouse died on or about April 23, 1941, and in November 1942 Mrs. Morehouse as survivor executed and delivered a deed to Sailer, which was recorded November 16, 1942. Appellant admits that at the time Mary Morehouse conveyed the land to Sailer, the land was adversèly occupied by Paulson and Paulson continued in possession of the land ever since.

Owing to the fact that Mrs. Morehouse had not been in possession of the land for more than a year prior to the issuance of a deed to Sailer and had not received any rents from such property for that same time the action was brought in the name of Mary Morehouse for the use and benefit of R. J. Sailer in compliance with the rule indicated in Galbraith v. Payne, 12 ND 164, 96 NW 258.

The "Notice of Expiration of the Period of Redemption", omitting unnecessary statements is as follows:

"I, A. J. Magelky, county auditor of Dunn County, North Dakota, hereby give notice that the real estate hereinafter described was at the tax sale held in this county on the 10th day of December, 1929 offered for sale for the delinquent taxes against it and was sold to said county, and that redemption has not been made therefrom and that the same is still the property of such county and unless redemption is made from such tax sale within ninety days from the date of this notice appearing above my signature tax deed will be issued to the county granting to it and investing in it absolute title in fee to said property and foreclosing all rights of redemption, and any and all other rights of the owner and of all mortgagees and lien holders and other persons interested therein. There is given herewith the descriptions of such parcels of real estate, and set opposite each description is the amount which will be required upon the date of expiration of the period of redemption to redeem such real estate from such tax sale exclusive of the cost of serving this

notice personally upon the owner and the person in possession thereof. Said property is described as follows, to wit:

| Subdivision | Sec. or Lot | Twp. or Blk. | Range | Years Tax | Publication Fees | Total |
|---|---|---|---|---|---|---|
| NE¼ .......................... | 10 | 142 | 93 | 1928 | .. | 204.56 |
|  | .. | .. | .. | 1929 | .. | 117.44 |
|  | .. | .. | .. | 1930 | .. | 72.67 |
| Hail Tax ..................... | .. | .. | .. | 1930 | .. | 30.82 |
|  | .. | .. | .. | 1931 | .. | 70.13 |
| Hail Tax ..................... | .. | .. | .. | ·1931 | .. | 33.34 |
|  | .. | .. | .. | 1933 | .. | 49.54 |
| Paul Paulson—renter .......... | .. | 21 | .. | 1934 | .. | 46.38 |
|  | .. | .. | .. | 1935 | .. | 42.72 |
|  | .. | .. | .. | 1936 | .. | 38.23 |
|  | .. | .. | .. | 1937 | .. | 40.77 |
|  | .. | .. | .. | .... | .50 | .50 |

Cost of Serving Notices as estimated by the Sheriff

Total ............................... 746.90

Plus actual costs of service.

Exclusive of the cost of serving this notice."

There is a companion case—Mary Morehouse for the use and benefit of R. J. Sailer v. Erling Paulson and Dunn County, etc. ante, 524. The only difference between the two cases is each applies to a different tract of land and naturally the amount of delinquent taxes differs. They were tried together and there is but one transcript of testimony. In the companion case taxes for 1934 and for 1935 and hail tax for 1930 are not stated to be delinquent. The "Notice of Expiration of Period of Redemption" is the same in form, states the same general facts and has the same record. The trial court found that the deed to the county was valid; that defendant Paulson was in possession of the land as tenant of the county, February 1940 till February 1942, and in February 1942 entered into the contract with the county for the purchase of the land and that the contract is still in force and effect. As conclusion therefrom the trial court found that neither the plaintiff nor R. J. Sailer had any interest in the land and that the defendant Paulson was the owner subject to the right of the county under his contract with the county. The plaintiff appeals

532

and demands "a review of all the issues properly and lawfully submitted . . . ."

Respondents state the issues thus:

"(1) Are the deeds invalid because the notices contained statements of the taxes for the years 1935, 1936 and 1937, separately itemized?

(2) Are the deeds void because the published notices contained the taxes for such subsequent years?

(3) Are the deeds void because the notices contained a statement of the hail taxes for the years 1928 and 1929, lumped in with the general taxes?

These, apparently, are the only issues raised by the Plaintiff as to the validity of the tax deeds. There are other issues in this case which developed at the trial and deal primarily with questions of equity and the question of joint tenancy, which has been mentioned, and which we will argue later."

Appellant points out that the "Notice of Expiration of Period of Redemption" states specifically that the total amount stated in the notice—$746.90—plus actual cost of service must be paid in order to effect a redemption from the sale of taxes due in 1928 and that on the face of the notice the amount demanded is grossly excessive, as it demands payment of taxes for 1935, 1936 and 1937, and the hail tax for the years 1930 and 1931 aggregating over $64.00. The appellant argues the amount demanded of him before redemption could be effected should not have included taxes for the years 1935, 1936 and 1937 nor the hail taxes.

Respondents contend that the correct interpretation of this notice of expiration of period of redemption shows that all the land owner was required to pay in order to redeem was the amount due at the tax sale December 10, 1929, and such other taxes that would be required to be paid thereafter because of the expiration of time for payment that would result in certificates of sale issued to the county—such as the taxes for 1929, 1930, 1931, 1933 and 1934. The respondents base this contention on the claim the notice shows the owner of the land was notified that all he would be required to pay was the amount *set opposite the description of the land,* this description is on one line, the amount

stated on this line is $204.56 and that the expression "to redeem such real estate from such tax sale" refers to the tax sale on December 10, 1929, and not any other tax sale. They claim that there is but one line in the notice which contains a description of the land; that the lines which follow, while they contain statements of years of taxes with amounts following, do not refer to any description of land for there is no description on the line containing these items; therefore the subsequent figures for tax years and tax amounts are merely gratuitous sources of information to the owner of the land for his convenience so he may know the records of the county indicate there are some liabilities which in the future he may be required to pay and thus he has the opportunity of settling his financial difficulty with the county as he sees fit. They urge this explanation applies also to the hail tax reference. They rather ingeniously argue that it is information of courtesy; that the county auditor could have ignored the fact there were subsequent taxes due or hail tax due and put the owner of the land to the trouble of looking up the records himself; that the auditor thoughtfully and courteously saved the land owner this trouble by voluntarily giving him the information set forth in these subsequent lines; that the tax payer is presumed to know what taxes he has to pay in order to redeem and the presumption is that he could not be misled for he ought to know.

It is a trite saying that every person is presumed to know the law. We refer to this in State ex rel. Bank of Streeter v. Weiler, 67 ND 593, 603, 275 NW 67, 71, and remark therein: "If knowledge of the law can be imputed to a tax payer so as to render such a notice good, then there is no necessity for notice." We say, however, in the same case that, "Tax redemption statutes are strictly construed in the interests of the land owner and tax titles can be acquired only after full compliance with all the provisions of law intended for the protection of those having the right to redeem." In that case we differentiate also between irregularities or omissions which are of substance and those otherwise. We cannot hold that the difference in the amount

required to redeem as stated in the notice here, and the actual amount necessary is a mere irregularity.

In Baeverstad v. Reynolds, 73 ND 603, 18 NW2d 20, we have a case where the county auditor, in issuing a notice of the expiration of the time of redemption from a tax sale, included therein subsequent delinquent taxes on certificates of sale issued at least three years prior to the service of the notice of expiration. We held that this was proper. We held however in the same case that where he included subsequent delinquent taxes, "some of which have been delinquent less than three years prior to the service of the notice, and sets forth the sum of all these delinquent taxes in one amount without specifying the year of each delinquency so that one entitled to redeem cannot tell from the notice the amount of taxes which have been delinquent for three or more years prior to the service of the notice, such notice is invalid and a tax deed issued thereon is void."

It is true that in this case cited it does not appear that the notice particularized the year as is done in the case at bar. Respondents urge that anyone reading the notice involved in this case, if he knew the law, would be able to determine for himself, that as the notice is dated January 1939, three years had not elapsed from the time the taxes for the years 1935, 1936 and 1937 had become delinquent. So while certificates could issue to the county therefor the county could not get a deed thereon. But the notice is specific. The owner is notified that he must pay the taxes for these years in order to redeem. As we say in State ex rel. Bank of Streeter v. Weiler (ND) supra, "Tax redemption statutes are strictly construed in the interests of the land owner and tax titles can be acquired only after full compliance with all the provisions of law intended for the protection of those having the right to redeem." Such statements do not protect "those having the right to redeem."

In Kelsch v. Miller, 73 ND 405, 15 NW2d 433, 155 ALR 1186, we point out that the furnishing of "additional information not required to be given, which is beneficial rather than harmful and cannot possibly operate to the prejudice of anyone entitled to be served, or who is served, with such notice," does not vitiate a

notice of tax sale which contains the recitals prescribed by law. However, there is nothing in the case at bar which indicates that the inclusion of the statement of hail taxes and of the subsequent delinquent taxes for which no certificate of sale could have been given was mere additional information helpful to the land owner rather than hurtful. Any reasonable person reading this notice involved in the case here must necessarily come to the conclusion that before a certificate of redemption would be issued the land owner would be required to pay $746.90.

The respondents seem to admit the implication that the amounts set forth in the subsequent lines—said to be of benefit to the owner of the land as a courteous indication of the amount which may be required of him later—though having no description in the lines must refer to the general description in the first line for they argue that the land owner would read this notice and know that these taxes and the hail tax were liabilities against the land, liabilities which he would be required to pay at some time. If this additional information intimates to the land owner there are later taxes against the NE¼ which he should settle and hail tax liens which should be discharged if he wants to keep the record of the NE¼ clear with the county, then it is an intimation they all refer to the NE¼, despite the fact there are no ditto marks on these subsequent lines.

We cannot give this notice the interpretation desired by the respondents. There is one broad column for the description of the subdivision and all of the opposite descriptions apply to that description unless some other description is set forth and it is significant that at the very end of the notice the whole matter is totaled and said to be $746.90 which is required to effect the redemption.

That this amount is palpably excessive is shown by two factors. The first is it requires the payment of the taxes for the years 1935, 1936 and 1937 despite the fact that taxes for those years could not be included in a notice of expiration of period of redemption issued in January 1939. The land could not be sold for the 1935 taxes until the end of the year 1936; for 1936 taxes until the end of 1937; nor for the 1937 taxes for the year 1937

536

until the close of the year 1938. In each case it would be three years thereafter before deeds could issue to the county. The notice was issued January 1939, and the three years of grace given to the tax payer could not begin until the end of the year 1939, the end of the year 1940 and the end of the year 1941.

In Stutsman v. Smith, 73 ND 664, 18 NW2d 639, we were dealing with an action to quiet title to land sold in 1929 for the delinquent taxes of 1928, and for which the subsequent taxes for the years 1929, 1931, 1932, 1933, 1934 and 1935 were not paid. Therein we stated:

"In order to effect a redemption under the provisions of c 235, ND Sess Laws 1939, the redemptioner must pay subsequent taxes, penalty and interest upon certificates that have been issued to the county more than three years prior to the issuance of the notice of expiration of the period of redemption and such subsequent taxes should be included in the notice."

This is the rule applicable to the case at bar.

Respondents appear to be under the impression that this is in conflict with the decision in Kelsch v. Miller (ND) supra. Examination of the two opinions will show the fallacy of this reasoning which is based on an erroneous construction of the facts. In this latter case all of the tax certificates held by the county had been issued more than three years before the notice of the expiration of the period of redemption. We say therein that the law of 1939,

"certainly does not in terms prohibit the inclusion in the notice of expiration of the period of redemption of more than one certificate of tax sale against the same tract of land, *where each of the certificates was issued more than three years before the notice of expiration of redemption was issued.* And such inclusion is in harmony with and tends to carry out the purposes and provisions of the law." (73 ND 418, 15 NW2d 440, 155 ALR 1186.)

The notice includes also hail taxes for the years 1930 and 1931, in the aggregate of $64.16. If these were to be considered as taxes, within the purview of the law dealing with tax sales and redemptions therefrom, the land owner, "if presumed to know

the law", would know that more than three years had expired from the time any debt thereon would have matured. He would therefore be required to determine at his peril whether such a "hail tax" could be collected under the ordinary process of tax sales, for the items are included in the notice in the same manner as are the alleged delinquent taxes, differing only in the fact they are denominated "hail tax." In Federal Farm Mortg. Corp. v. Falk, 67 ND 154, 270 NW 885, 113 ALR 724, we hold that these hail indemnity taxes are not taxes "within the purview of the State Constitution." Later we point this out again in Federal Land Bank v. Johnson, 67 ND 534, 274 NW 668.

In the case at bar however we are not dealing with the case of where the lien for hail assessment or tax and the lien for general tax is involved in the *certificate of sale to the county* nor any notice of tax sale. We are dealing with the question of notice of redemption from this sale to avoid the issuance of a tax deed. Appellant does not raise any question with reference to the certificate of sale issued on the tax sale. In this case of Federal Land Bank v. Johnson (ND) supra, we point out specifically that:

"The laws of this state give to a taxpayer the right to pay either the general taxes or the hail indemnity tax without regard to whether he also at the same time pays the other. In short, they give to the taxpayer the right to pay either tax if or when he has sufficient funds so to do and they do not penalize a taxpayer who does not have sufficient moneys to pay the hail indemnity tax."

Ex. 6, the notice of expiration of period of redemption, clearly notifies the land owner that if he desires to redeem, and intends to redeem from the tax sale, held on December 10, 1929, and thus avoid the issuance of a tax deed, he must pay $746.90. To make sure the land owner will know the calculation is accurate the auditor set forth, opposite the description of the land—NE¼— the various years for which the taxes are delinquent, and the two years where hail taxes were not paid; and to have no misunderstanding as to the amount which he will require of the land owner before he will be permitted to redeem this piece of land from

the tax sale of December 10, 1929, the auditor stated the total amount.

The plaintiff argues that he is entitled to receive from Paulson a stated sum of money because of Paulson's use of the land after the issuance of the tax deed to the county. He does not make any such claim in his pleadings and thus we do not consider it.

The respondent raises three questions in defense. One is based on the theory of joint tenancy, another is termed "equitable defenses", and the third is the defense of laches.

In the defense of joint tenancy and as foundation therefor, respondent states:

"The deed to the Plaintiff's grantor runs to the grantor named in the title of this action and to Henry L. Morehouse. In this deed there was an inconsistency between the granting clause and the habendum clause. The granting clause apparently purports to create a joint tenancy, but the habendum clause did not contain words of joint tenancy but conveyed the property to the grantee, their heirs and assigns."

This matter is not involved in the case at bar and we see no merit in this objection.

The principal ground for "equitable defense" is that the person for whose benefit this action is prosecuted engaged in a champertous enterprise when he got his deed because the record shows Mary Morehouse had not been in possession of the premises nor received rentals therefrom for more than one year prior to Sailer's purchase of the property, that Sailer knew the property was in the adverse possession of another and that Sailer obtained his deed some six months after the property was sold to Paulson under contract with the county. Many pages of respondents' brief are devoted to this subject.

We find nothing in the record which shows under what right or authority Paulson was on the land in 1939. The defendant Paulson in the companion case testified that "prior to Dunn County taking it over we leased it from Mrs. Morehouse." The testimony is apparently apropos to the case at bar. It is testimony given in this case and Paul Paulson testified that prior to 1942, "my brother and my dad" were in possession. He does not

state how. The record shows the tax deed to the county was issued October 2, 1939.

Just how defendant Paulson was in possession of the land in January 1939, is not shown. Was he the tenant of Mr. and Mrs. Morehouse? They were the owners at that time. There is no showing that anyone else was owner nor does Paulson claim he went on to the land without authority from anyone or without claim of title. It is true he says that Mrs. Morehouse did not receive any rents or profits at that time. If we may indulge in presumptions we could assume he was the tenant of the Morehouses. There is nothing to show he notified either Morehouse of receipt of the notice involved and as soon as the county received its deed, or shortly thereafter, he entered into a contract with the county to purchase the land. Appellant however admits his possession was adverse to Mrs. Morehouse.

We need not dwell further thereon. The case of Galbraith v. Payne, 12 ND 164, 96 NW 258, supra, is similar in many respects to the one at bar. (See also Burke v. Scharf, 19 ND 227, 124 NW 79.) That was an action to determine adverse claims, the land had been sold for taxes, the defendant was in possession under these tax deeds, plaintiff purchased the land from the original land owner thereafter and commenced action in his own name. That action was as much subject to the equitable defense that he who seeks equity must do equity and must come into court with clean hands. We hold therein that such deed, while invalid as to the adverse claimant, is good as between the grantor and grantee and in effect we hold that the grantor may maintain the action for the benefit of the grantee. That is the situation here.

Respondent Paulson alleges loss occurring to him because of rise in price of land, some improvements made—all in belief in the validity of the tax proceedings. " 'Their mutual ignorance of the invalidity of the tax sale no more affected the conscience of one than the other; and it may be more unconscionable to enforce the invalid tax sale against one party than it would be against the other to set it aside, and leave the parties to their

rights as they would then exist.'" Werner v. Werner, 74 ND 565, 572, 23 NW2d 757, 759.

Respondent Paulson alleges laches. There is no merit in this. Any delay in bringing action on the part of the plaintiff did not in any way alter the status of the defendant Paulson. In this respect it may not be out of place to mention that if one attempting to avoid tax deeds is presumed to know the law, and the effects thereof, the purchaser from the county would also be required to know that this notice of expiration of period of redemption is invalid because it required as terms of redemption the payment of taxes which could not be included and the payment of the hail taxes. He knew also Mrs. Morehouse had been owner of the land and that members of his family had rented from her. This notice of expiration of time of redemption is void, and therefore the tax deed issued to the county is void. For this reason therefore, the judgment is reversed, and judgment ordered for the plaintiff.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE and MORRIS, JJ., concur.